## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 39217

| | | |
|---|---|---|
| DIANNE RUDDY-LAMARCA, | ) | |
| | ) | **Moscow, September 2012 Term** |
| Plaintiff-Respondent, | ) | |
| | ) | **2012 Opinion No. 150** |
| v. | ) | |
| | ) | **Filed: December 20, 2012** |
| DALTON GARDENS IRRIGATION | ) | |
| DISTRICT, | ) | **Stephen Kenyon, Clerk** |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

The decision of the district court is <u>affirmed</u>.

Malcolm Dymkoski, Coeur d'Alene, for appellant. Malcolm Dymkoski argued.

James, Vernon & Weeks, P.A., Coeur d'Alene, for respondent. Susan Weeks argued.

---

HORTON, Justice.

This is an appeal from a district court's order defining the width of an easement for an irrigation pipeline. Dalton Gardens Irrigation District (the District) owns the pipeline and intends to replace the existing four-inch pipe with a ten-inch pipe. A portion of the pipeline crosses Diane Ruddy-Lamarca's property. The parties agree that an easement of some kind exists in favor of the District. However, they disagree regarding the nature and width of that easement. The district court held that the District had an express easement and an easement by prescription that are identical in location and sixteen feet wide. The District appeals, claiming that the district court erred by restricting its easement to sixteen feet in width and requiring it to make every effort to preserve trees and a drain field on Ruddy-Lamarca's property. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ruddy-Lamarca has owned a five-acre tract of land in Kootenai County since 1990. The District owns and operates an irrigation pipeline that crosses Ruddy-Lamarca's property. The pipeline was originally installed in 1954 and consisted of a four-inch buried pipe. Eight years

- 1 -

later, a new four-inch pipeline was installed on the property in the same location. The district court found that the machinery, supplies for the pipeline, and the space required for the excavated soil required thirty to forty feet in width in 1962.

The District intends to replace the existing pipe with a ten-inch pipe. Rather than remove the old pipe, the District plans to lay the new pipe alongside the old one. To accomplish this, the District intends to use a tracked excavator and two rubber-tired backhoes. These machines would be used to dig the trench, place the pipe, and backfill the trench. The District's proposed method will require between thirty and forty feet of total width.

There are two maple trees that are between forty and fifty years old on Ruddy-Lamarca's property located within the area that the District asserts is necessary for it to dig the trench and lay the new pipe. Ruddy-Lamarca installed a new drain field for her septic system in 1996. The drain field also lies within the area the District contends is needed to replace the pipeline. The District's proposed manner of constructing the new pipeline may kill the two maple trees and cause Ruddy-Lamarca's septic system to fail.

Ruddy-Lamarca presented testimony from an expert as to an alternative method of installing the new pipeline. This method would use one tracked excavator, a small Bobcat tractor, and a hand compactor. It would require only sixteen feet of total width and would preserve the trees and the drain field. Although Ruddy-Lamarca's proposed method of installing the pipeline would be slower,[1] there was no evidence presented as to the relative cost of the two proposals.

The District has an express easement across Ruddy-Lamarca's property. It gives the District a "right-of-way for the construction, enlargement and maintenance of all canals, flumes and water tanks of the vendor, heretofore constructed or hereafter to be constructed, over and across said lands for the irrigation of other lands." The document granting the easement was executed in 1911 and is silent as to the easement's width and location.

---

[1] "Slower" is a relative term. The District's proposal would have required two days to complete the work across Ruddy-Lamarca's property. Ruddy-Lamarca's proposal would have required twice as long to accomplish. There is no small measure of irony that more than two and one-half years have passed between the time Ruddy-Lamarca filed her lawsuit and the resolution of this appeal.

At trial, the court found that the District had both an express and a prescriptive easement that were "identical in location and width."[2] The trial court determined the easement to be sixteen feet in width, with its centerline at the location of the present pipeline. The trial court also found that the District had acquiesced in the location of the trees and drain field and ordered the District to "make every effort" to preserve them when repairing, maintaining or replacing the pipeline. The District timely appealed.

## II. STANDARD OF REVIEW

We recently described our standard of review in *Harris, Inc. v. Foxhollow Const. and Trucking*:

> We review a district court's bench trial decisions to determine whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. This Court will set aside findings of fact only when clearly erroneous. We will not disturb findings supported by substantial and competent evidence even if the evidence is conflicting. It is the province of the district court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. We, therefore, liberally construe a trial court's findings in favor of the judgment entered. When it comes to matters of law, however, we are not bound by the trial court's conclusions; this Court is free to draw its own conclusions from the facts presented.

151 Idaho 761, 768, 264 P.3d 400, 407 (2011) (citations omitted).

## III. ANALYSIS

The District asserts that the district court erred when it determined that the width of its easement was sixteen feet and by directing that the District make every effort to preserve the trees and drain field. The District also takes exception to a statement in the district court's memorandum decision and asks that this Court order that a different judge be assigned upon remand. We address these issues in turn.

### A. The district court did not err in determining that the width of the secondary easement is sixteen feet.

The parties do not dispute that an easement exists. The dispute surrounds the scope of that easement. Whether express or obtained by prescription, the result is the same in this case. An indefinite express easement is defined by the intent of the parties as demonstrated by the easement's initial use. *Coulsen v. Aberdeen-Springfield Canal Co.*, 47 Idaho 619, 629, 277 P.

---

[2] Although we recognize the inconsistency of the existence of identical express and prescriptive easements, because neither party objected to the characterization of the easement and the fact that it does not affect the outcome of this appeal, we will not address it in this opinion.

542, 545 (1929); *see also Reynolds Irr. Dist. v. Sproat*, 69 Idaho 315, 334, 206 P.2d 774, 786 (1948). An easement by prescription is defined by the easement's "continuous and uninterrupted" use for the prescriptive period. *Beckstead v. Price*, 146 Idaho 57, 62, 190 P.3d 876, 881 (2008). Either way, the District's primary easement is limited to the physical dimensions of the pipeline itself. The first use of this easement was in 1954 as a buried irrigation pipeline. Likewise, the only continuous and uninterrupted use of the easement for the full statutory period was as a buried irrigation pipeline.

The District argues that for purposes of its express easement, "initial use" should include the method of construction, so that if forty feet of width was needed to originally construct the pipeline, then the easement is forty feet wide. However, this is not what "initial use" means. The *Coulsen* case relied on several out-of-state cases to establish the initial-use rule. None of those cases considered the method of construction. Rather, they limited the easement to the physical dimensions of the ditch, canal, or pipeline. *See White Bros. & Crum Co. v. Watson*, 117 P. 497, 499 (Wash. 1911); *Felsenthal v. Warring*, 180 P. 67, 69-70 (Cal. Dist. Ct. App. 1919).

The District erroneously cites *Coulsen* in support of its contention that the method of construction fixes the scope of the easement. To the contrary, *Coulsen* stands for the proposition that the easement is defined by that which is constructed. The *Coulsen* opinion cited *Winslow v. City of Vallejo*, 84 P. 191 (Cal. 1906), which held that an easement is limited to the course or manner in which it has been used. *Id*. at 192. The easement in that case granted a right to enter onto the land to install a water pipe. It was indefinite as to location and scope. The act of installing a ten-inch pipeline fixed the scope of the easement to the physical dimensions and location of the pipeline. *Id*. at 193. The California Supreme Court held that the addition of a fourteen-inch pipeline parallel to the existing pipeline would exceed the scope of the easement. *Id*. In reaching this conclusion, the *Winslow* court relied upon an earlier New York decision that held that replacing a two-inch pipeline with a four-inch pipeline impermissibly expanded the easement. *Id*. at 192. In short, the *Winslow* court only looked to what was on the land, not how it was put there, to determine the scope of the easement.

In *Coulsen*, this Court stated that constructing the ditch limited the easement just as an express easement would have for a ditch of "the size and location and with the precise means of conducting water as that actually constructed." *Coulsen*, 47 Idaho at 629, 277 P. at 545. In other words, the scope of the easement is defined by that which was constructed, rather the means

of construction. We conclude that "initial use" for purposes of an undefined express easement does not include all area occupied during the construction of the easement. For this reason, the District's primary easement is limited to the physical dimensions of the current pipeline.[3]

The real issue presented by this appeal is not the primary easement. Rather, it is scope of the secondary easement. "The term 'secondary easement' refers to the right to enter and repair and do those things necessary to the full enjoyment of the easement . . . ." *Conley v. Whittlesey*, 133 Idaho 265, 271 n.1, 985 P.2d 1127, 1133 n.1 (1999) (citing *White Bros. & Crum Co.,* 117 P. at 499); *Caldwell v. Cometto*, 151 Idaho 34, 38, 253 P.3d 708, 712 (2011). Use of the secondary easement must always be reasonable. *Cometto*, 151 Idaho at 38, 253 P.3d at 712.

More recently, in two cases involving secondary easements for snow removal, we have suggested that a secondary easement may have fixed dimensions. In *Machado v. Ryan*, 153 Idaho 212, 280 P.3d 715 (2012), we addressed a secondary easement for snow removal and storage. The owner of the servient estate argued that the road was rarely used in the winter, so snow removal and storage was not contemplated when the easement was created. *Id*. at ___, 280 P.3d at 724. We held that the width of the secondary easement is to be determined by the "circumstances in existence at the time the easement was given," and that although "snow removal may be a part of reasonable maintenance on a residential access road, the district court must determine the width based upon the circumstances at the time the easement was created." *Id*. at ___, 280 P.3d at 724-25. In *Cometto*, this Court upheld the district court's finding that there was a three-foot secondary easement for snow removal. *Cometto*, 151 Idaho at 38, 253 P.3d at 712. There, we affirmed the district court's decision to preserve the trees within that three-foot easement, as the district court found that the trees within the secondary easement had not been shown to unreasonably interfere with the use of the secondary easement. *Id*.

Although it is necessary for courts to define the scope of easements, both primary and secondary, in the process of resolving conflicts between parties,[4] this case presents the question

---

[3] We note that Ruddy-Lamarca has not cross-appealed the district court's determination that installation of the larger pipeline was a permissible use of the District's easement.

[4] We have considered an approach adopted by sister states. The Montana Supreme Court has held that a secondary easement for an irrigation ditch is "indefinite and uncertain." *Laden v. Atkeson*, 116 P.2d 881, 885 (Mont. 1941). It went on to state that the scope of a secondary easement "cannot be predetermined with certainty" because some areas of a ditch "may never need attention other than casual inspection" while others "may need constant attention and repair." *Id*. As a result, some areas may need very little in terms of the secondary easement, while others may require much more. *Id*. That Court went on to state that "in each instance the amount used would constitute a question of fact, determination of which would disclose whether the privilege of reasonable usage had been abused." *Id*. at 885-886. Thus, when using the secondary easement, the holder of that easement is under a duty to impose

whether the width of a secondary easement is immutable or whether it may change over time. In resolving this question, we will apply long-standing principles.

> The law is well settled with respect to the correlative rights of dominant and servient owners of easements. The owner of the servient estate is entitled to use the estate in any manner not inconsistent with, or which does not materially interfere with, the use of the easement by the owner of the dominant estate. In other words, the servient estate owner is entitled to make uses of the property that do not unreasonably interfere with the dominant estate owner's enjoyment of the easement.

*Nampa & Meridian Irr. Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 522, 20 P.3d 702, 706 (2001) (citations omitted). The dominant estate owner owes a corresponding duty to minimize the impact of its enjoyment of the easement upon the servient estate. Thus, when considering a case involving the cleaning and maintenance of canals, this Court held that the owner of the easement is entitled to occupy no "greater width of land along the banks of the canal than is absolutely necessary." *Gorrie v. Weiser Irr. Dist.*, 28 Idaho 248, 253, 153 P. 561, 562 (1915).

We hold that the rights of the owner of the dominant estate are limited by this rule of reasonableness. As applied to this case, we observe that methods of pipeline installation that may have been reasonable fifty or sixty years ago are not necessarily reasonable today. The parties presented two alternative methods of installing the new pipeline to the district court. One uses three pieces of heavy machinery and requires up to forty feet of width. The other method uses one piece of heavy machinery and requires only sixteen feet of width. Given the absence of evidence of the respective costs of these methods of installation, the district court correctly determined that the less intrusive method of pipeline installation defined the permissible scope of the District's actions on Ruddy-Lamarca's property. We affirm the district court's determination that the District's easement entitles it to use up to a sixteen-foot wide strip on Ruddy-Lamarca's property to install the replacement pipeline.

---

upon the servient estate only to the extent as is reasonably necessary. The Colorado Supreme Court came to the same conclusion. It held that defining an absolute width for a secondary easement to an irrigation canal was inappropriate. *Knudson v. Frost*, 139 P. 533, 535 (Colo. 1914). Rather, "for the purpose of repair [the easement holders] may require only the use of defendant's lands for the necessary distance on either side of plaintiffs' ditch in certain places and at certain times." *Id.*

The requirement that the owner of the dominant estate minimize its intrusion onto the servient estate is consistent with our holding today. Although the Colorado and Montana approaches appear reasonable and are consonant with the principles governing easements, we do not deem it wise to invite litigants to continue their battles in subsequent litigation as to "whether the privilege of reasonable usage had been abused." Thus, we expect trial courts to define the scope of primary and secondary easements.

**B. The district court did not err in directing the District to make every effort to preserve the trees and drain field.**

As discussed, the District's easement carries with it a secondary easement to do that which is "necessary to the reasonable and proper use and enjoyment of the easement" so long as it burdens the servient estate "as little as possible." *Cometto*, 151 Idaho at 38, 253 P.3d at 712. The district court's order that the District "make every effort" to preserve the trees and drain field is consistent with this principle, although it is subject to the underlying principle of reasonableness. As we interpret the district court's order as requiring the District to "make every *reasonable* effort" to protect the trees and drain field, we affirm the judgment.

**C. We will not address the District's request for assignment of a new judge on remand.**

The District complains of the following statement in the district court's memorandum decision:

> The Court can appreciate that given the fact that the parties are more than 20 feet apart as to their position on the width of this easement, this case might not resolve short of trial. However, given the fact that a construction method was available to the District (which apparently would cost no more than the District's preferred method), which would have fit into the width proposed by Ruddy-Lamarca, it is perplexing that this case was not capable of resolution prior to trial. The costs of preparing and taking this matter to trial would certainly offset any possible difference in cost between the two proposed methods (again, no difference in cost was shown).

We share the district court's perplexity, given the costs to the parties of this litigation and the resulting delay in the installation of the new pipeline. However, because we affirm the judgment of the district court, we do not address whether the District would be entitled to a new judge on remand.

## IV. CONCLUSION

We affirm the judgment of the district court. Costs to Ruddy-Lamarca.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.