IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket Nos. 38325/38326/38327

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | Boise, January 2013 Term |
| | ) | |
|     Plaintiff-Respondent, | ) | 2013 Opinion No. 26 |
| | ) | |
| v. | ) | Filed: February 22, 2013 |
| | ) | |
| WOODROW JOHN GRANT, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
|     Defendant-Appellant. | ) | |

_____

Appeal from the District Court of the Sixth Judicial District, Bannock County. Hon. Robert C. Naftz, District Judge.

The decision of the district court is <u>affirmed</u>.

Sara B. Thomas, Idaho Appellate Public Defender, Boise, attorneys for Appellant. Shawn F. Wilkerson argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorneys for Respondent. Kenneth K. Jorgensen argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

In 2006, Woodrow John Grant pleaded guilty to aggravated battery; he successfully completed a period of retained jurisdiction and was placed on probation. In 2009, Grant was charged with possession of methamphetamine, domestic battery, aggravated assault, and unlawful possession of a firearm. Grant's appointed counsel moved to withdraw, stating that Grant had reneged on an agreed-upon plea bargain and that communications between them had broken down. The district court denied the motion. Later, Grant pled guilty to possession of a controlled substance and domestic battery, and admitted to violating the terms of his probation. The district court considered a letter and live testimony from the victim of Grant's domestic battery, in which the victim expressed her opinions on Grant's crime, character, and the sentence

1

that would be proper for him. Thereafter, the district court sentenced Grant to five years fixed and five years indeterminate for domestic battery, to be served concurrently with a sentence of two years fixed and three years indeterminate for possession of methamphetamine. The district court also revoked Grant's probation and executed his previously suspended sentence of four years fixed and six years indeterminate. The two new sentences were to be served consecutively to the reinstated 2006 sentence. Therefore, Grant was sentenced to a total of nine years fixed and eleven years indeterminate—far less than the thirty-two year maximum combined sentence for his three crimes. Grant requested leniency in three I.C.R. 35 motions, which the district court denied. Grant appeals, arguing that the district court erred by refusing to allow his counsel to withdraw, by considering the victim's impact statements in their entirety, and by refusing his requests for leniency.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In early 2006, Grant pleaded guilty to aggravated battery.[1] The charge was based on an incident in which Grant fired a bullet into the ground in the middle of a fight; the bullet ricocheted and injured one of the combatants. The Sixth District Court for Bannock County sentenced Grant to a prison term of four years fixed and six years indeterminate, but retained jurisdiction. At the end of the period of retained jurisdiction, the court suspended Grant's sentence and placed him on four years of probation. Unfortunately, Grant badly failed to comply with the terms of his probation. As he later admitted, he was in arrears on his court-imposed financial obligations and had repeatedly used methamphetamine.

In November of 2009, the State charged Grant with possession of a controlled substance (methamphetamine).[2] In December of 2009, the State charged Grant with domestic battery,[3] aggravated assault, and unlawful possession of a firearm. These latter three charges arose from a separate incident in which Grant burned his then-girlfriend's face with a lighted cigarette and allegedly threatened to kill her while holding a gun to her head.

In February of 2010, Grant's appointed counsel, Douglas K. Dykman, filed a Motion to Withdraw pursuant to I.C.R. 44.1. Dykman claimed that Grant had tentatively agreed to a plea bargain, but rescinded his acceptance after the State refused to make the agreement binding on

---

[1] I.C. § 18-907.
[2] I.C. § 37-2732(c)(1).
[3] I.C. § 18-918(2)(a).

2

the district court.  Dykman stated that he had talked "at length" with Grant about whether to accept the nonbinding plea bargain, but that they had a "fundamental disagreement" on that issue, and, as a result, their communications had broken down.  He further stated that, if he were allowed to withdraw and substitute counsel were appointed for Grant, the new attorney might be able to "give another insight" into the plea negotiations.  The State did not object to Dykman's Motion to Withdraw.  Nonetheless, the district court denied the motion.  The Court reasoned that, because the disagreement between Grant and Dykman centered on Grant's desire to take his case to trial, the key question was whether Dykman could competently represent Grant at trial despite their disagreement regarding the plea bargain.  The court then asked Dykman: "You're able to represent [Grant's] best interest and proceed to trial if you need to, aren't you?"  Dykman responded by simply stating: "If the Court denies my motion, I would ask the Court to set it for trial."  In other words, Dykman gave the court reason to believe that the disagreement regarding the plea deal had not tainted the attorney-client relationship so badly as to prevent him from competently representing Grant.

During the hearing, the district court never specifically asked Grant to describe his relationship with his attorney.  Grant did respond affirmatively when asked whether he wanted the court to appoint new counsel.  However, at the conclusion of the hearing, Grant stated that he had no questions regarding the proceeding.

Grant pled guilty to possession of a controlled substance.  In a guilty plea questionnaire, Grant circled "YES" in response to the question "Do you feel you have had sufficient time to discuss your case with your attorney?"  He also circled "YES" in response to the question "Have you told your attorney everything you know about the crime."  He responded "NO" to the question "Is there anything you have requested your attorney to do that has not been done?" and, as one would expect, left blank lines beneath that question in which he could have explained anything that his counsel failed to do.  Finally, Grant verified that he reviewed evidence provided to his counsel during discovery and that he had told his counsel about any possible exculpatory witnesses.  Grant also pled guilty to domestic battery.  In an identical questionnaire, Grant gave the same responses to the questions listed above.

Grant also discussed Dykman's representation with the court in his plea colloquy.  The court asked: "Are you satisfied with [Dykman's] representation of you?"  Grant responded "Very

happy with it." The court then pressed Grant further, asking: "do you have any complaints with regard to how he has been representing you?" Grant replied: "No, sir, Your Honor."

In June of 2010, Grant moved to strike a letter that the victim of his domestic violence had submitted in connection with his sentencing. The district court denied the motion and admitted the statement in its entirety. In the letter, the victim offered numerous opinions on Grant's character, including that he will "sabotage" anything that "is going well" and that he is "like a snake" in attempting to evade responsibility. The victim also stated that, if Grant were sentenced to only ten years in prison, he would be "getting a pretty good deal." Similarly, in her oral statement at Grant's sentencing hearing, the victim opined on Grant's character, stating that he "is a mixed up, angry person" who "somehow . . . thinks it's okay for everyone to suffer his wrath." She also opined on his proper sentence, stating: "I believe that a life sentence would be more than fair for him knowing what he has done to me and other people in his life through physical and emotional harm, it is more than fair—at least the maximum penalty, give or take."

The district court then sentenced Grant to two years fixed and three years indeterminate for possession of a controlled substance, and five years fixed and five years indeterminate for domestic battery. The district court further found that Grant had "demonstrated an inability to conform his conduct to the requirements necessary to successfully complete the term of probation," and therefore executed Grant's suspended sentence. The two new sentences were to be served concurrently with each other but consecutively to Grant's reinstated 2006 sentence for aggravated battery.

In the sentencing hearing, the court detailed its reasoning for the duration of imprisonment that it imposed. While acknowledging that Grant had behaved admirably while in jail, the court worried that he might have done so merely to reduce his sentence, rather than out of a genuine desire to reform his character. The court also recognized that it was obliged to consider the societal goals of deterrence and punishment. In particular, the court expressed concern about the fact that Grant had twice put others' lives at risk, and that he continued to abuse drugs and commit dangerous felonies while on probation. The court reasoned that, if he were not incarcerated, Grant likely would continue to commit serious crimes. Furthermore, a lighter sentence would "depreciate the significance" of Grant's crimes, thereby subverting the goal of general deterrence.

4

Grant timely filed substantially identical I.C.R. 35 motions in each of the three cases, arguing that his sentences were excessive. In response to Grant's Rule 35 motions, the district court concluded that Grant would pose a continuing risk to society if he were sentenced to a shorter prison term, in light of the fact that he continued to commit serious crimes despite having been given a chance to reform himself while on probation for his 2006 aggravated battery sentence. The district court also noted that Grant's behavior had placed his victim in great peril. Therefore, the district court denied Grant's Rule 35 motions.

### III. ISSUES ON APPEAL

A.     Should Grant's guilty pleas to possession of a controlled substance and domestic battery be vacated on the grounds that the district court abused its discretion in denying Dykman's Motion to Withdraw, or, in the alternative, because the district court failed to conduct a sufficient inquiry in response to the Motion?

B.     Should Grant's sentences be vacated on the grounds that the district court improperly admitted victim impact statements in which Grant's victim opined about his crime, his character, and the appropriate sentence for his crime?

C.     Did the district court abuse its discretion in sentencing Grant to consecutive prison terms?

D.     Did the district court abuse its discretion in denying Grant's I.C.R. 35 request for leniency?

### IV. ANALYSIS

**A.     The district court did not abuse its discretion in denying Dykman's Motion to Withdraw, or in deciding to what extent it was necessary to question Grant regarding the Motion.**

"A trial court may appoint substitute counsel for an indigent defendant upon a showing of good cause." *State v. Severson*, 147 Idaho 694, 702, 215 P.3d 414, 422 (2009); *see also* I.C. § 19-856; I.C.R. 44.1. The onus is on the attorney seeking withdrawal to present sufficient facts to support his motion. *See Frazier v. State*, 15 S.W.3d 263, 265–66 (Tex. App. 2000). We will reverse the trial court's decision only if it violates the defendant's right to counsel. *See Severson*, 147 Idaho at 702, 215 P.3d at 422. Dykman essentially offered two bases for his motion: (1) Grant insisted on rejecting a plea deal, and (2) their relationship had become strained. Neither is an adequate ground for withdrawal.

First, counsel may not withdraw merely because his client refuses to plead guilty, or because another attorney might possibly be able to convince the client to plead guilty. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain

5

fundamental decisions regarding the case, [such as] . . . whether to plead guilty . . . ."); *Nehad v. Mukasey*, 535 F.3d 962, 971 (9th Cir. 2008) ("[I]n the criminal context, it is widely held that counsel's threatening to withdraw unless the defendant agrees to plead guilty can render the plea involuntary."); I.R.P.C. 1.2(a) ("In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered . . . .").

Second, appointed counsel may not withdraw merely because his client refuses to communicate with him. An indigent defendant has no right to select a particular appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980). Nor may a defendant manufacture such a right by refusing to communicate with his attorney; otherwise, the defendant could forever delay his trial.

Grant contends there is no evidence from which the district court could have concluded that the alleged communication breakdown was his fault. We cannot be sure what evidence the district court relied on at the time it made this finding due to the incompleteness of the record. However, Grant's protestation rings hollow given that, before this appeal, he praised Dykman rather than blamed him for any communication difficulties. The district court specifically asked Grant about Dykman's performance during his guilty plea colloquy. Grant never stated that he had problems communicating with Dykman. Quite to the contrary, he had no complaints about Dykman's performance, with which he was "very happy." He reaffirmed this on two separate guilty plea questionnaires. At oral argument, Grant's appellate counsel conceded that there was no reason to disbelieve Grant's glowing evaluation of Dykman's representation.

Nor did the district court err by not questioning Grant extensively during the hearing on Dykman's motion. When a *defendant* alleges a total communication breakdown, a district court must "afford [the] defendant a full and fair opportunity to present the facts and reasons in support of *his motion* for substitution of counsel . . . ." *Clayton*, 100 Idaho at 898, 606 P.2d at 1002 (emphasis added). Unlike defendants in several other Idaho appellate cases,[4] Grant at best hinted that he was dissatisfied with Dykman's performance on only one occasion: when asked during the hearing on Dykman's motion whether he wanted new appointed counsel, Grant merely responded "Yes, Your Honor." Because Grant took no initiative to request substitute counsel,

---

[4] *See State v. Nath*, 137 Idaho 712, 714–15, 52 P.3d 857, 859–60 (2002); *State v. Clayton*, 100 Idaho 896, 606 P.2d 1000 (1980); *State v. Lippert*, 152 Idaho 884, 276 P.3d 756 (Ct. App. 2012); *State v. Gamble*, 146 Idaho 331, 193 P.3d 878 (Ct. App. 2008); *State v. Lippert*, 145 Idaho 586, 181 P.3d 512 (Ct. App. 2007); *State v. Peck*, 130 Idaho 711, 946 P.2d 1351 (Ct. App. 1997).

*Clayton* is inapposite. The district court was free to exercise its discretion when deciding the extent to which it was necessary to question Grant. At the conclusion of the hearing, the court asked Grant if he had any questions. Rather than discussing any issues that he might have had with Dykman's representation, Grant simply stated "No, sir, Your Honor." On these facts, that inquiry was sufficient.

**B.      The district court properly admitted victim impact statements in which Grant's victim opined about his crime, his character, and the appropriate sentence for his crime because Grant did not face the death penalty.**

Crime victims in Idaho have a constitutional right "[t]o be heard, upon request, at all criminal justice proceedings considering . . . sentencing . . . of the defendant, unless manifest injustice would result." Idaho Const. art. I, § 22(6); *see also* I.C. § 19-5306(1)(e). Victim impact statements that include "characterizations and opinions about the crime, the defendant, and the appropriate sentence are not admissible" in capital sentencing proceedings. *State v. Payne*, 146 Idaho 548, 573, 199 P.3d 123, 148 (2008). As it must, this Court has followed the United States Supreme Court's determination that the admission of these three categories of testimony in death penalty sentencing violates the Eighth Amendment of the United States Constitution. *Id.* (citing *Payne v. Tennessee*, 501 U.S. 808, 830 n.2 (1991)). In 2004, our Legislature specifically adopted these three limitations in the statute governing capital sentencing, I.C. § 19-2515(5)(a); *see also State v. Payne*, 146 Idaho at 573 n.14, 199 P.3d at 148 n.14, but the Legislature has not seen fit to make a similar modification to I.C. § 19-5306(1)(e), which deals with victim impact statements in general. Where such evidence is nonetheless admitted during capital sentencing, this Court conducts a harmless-error review. *Id.* at 574; 199 P.3d at 149.

Grant argues that the district court erred by admitting his victim's opinions on his crime and his character, and her requests that he receive certain prison sentences.[5] Although Grant admits that our Court of Appeals has refused to import the threefold prohibition from *Payne v. Tennessee* into non-death-penalty cases, he urges that we now do so, on the grounds that the policy rationale behind *Payne* applies equally in all criminal cases. Therefore, according to

---

[5] As noted above, the victim variously suggested that Grant receive ten years; the maximum penalty, "give or take"; or life in prison. Notably, the court sentenced Grant to only nine years fixed. Therefore, although it was not error for the judge to admit the victim impact statements at issue here, the admission likely would have been harmless even if we assume *arguendo* that it was erroneous.

7

Grant, we must vacate his sentences unless the State proves beyond a reasonable doubt that the admission of the victim impact statements did not affect those sentences. Grant overlooks the fact that this Court—as opposed to only the Court of Appeals—has held that the *Payne v. Tennessee* limitations are inapplicable in non-capital sentencing:

> This Court has held that, because Idaho Code section 19-5306 does not include any limitations that would prevent a victim of a non-capital crime from sharing his or her sentencing recommendation with the trial court, such a statement is permissible. *State v. Matteson*, 123 Idaho 622, 625, 851 P.2d 336, 339 (1993) ("When a statute's language is broad enough to include a particular subject matter, an intent to exclude it from the statute's operation must be specifically expressed."); *see also State v. Campbell*, 123 Idaho 922, 928, 854 P.2d 265, 271 (Ct. App. 1993) ("[T]he sentencing court may, in non-capital cases, consider victim impact statements and statements from victims requesting a particular sentence.").

*State v. Lampien*, 148 Idaho 367, 374 n.2, 223 P.3d 750, 757 n.2 (2009); *see also State v. Deisz*, 145 Idaho 826, 832, 186 P.3d 682, 688 (Ct. App. 2008); *State v. Kerrigan*, 123 Idaho 508, 510, 849 P.2d 969, 971 (Ct. App. 1993); *State v. Grove*, 120 Idaho 950, 952, 821 P.2d 1005, 1007 (Ct. App. 1991) ("[T]he sentencing judge may consider in non-capital cases victim impact statements, provided the trial court does not give undue weight to the statement whereby the emphasis shifts from the crime to consideration of the 'worth' of the victim."); *State v. Chapman*, 120 Idaho 466, 470, 816 P.2d 1023, 1027 (Ct. App. 1991) ("The introduction of victim impact statements in other than a death penalty case has been sanctioned in Idaho by *State v. Searcy*, 118 Idaho 632, 798 P.2d 914 (1990)."). Other jurisdictions are in accord. *See United States v. Santana*, 908 F.2d 506, 507–08 (9th Cir. 1990); *United States v. Schwarz*, 24 M.J. 823, 824 n.2 (A.C.M.R. 1987); *People v. Turner*, 539 N.E.2d 1196, 1213 (Ill. 1989); *State v. Tyler*, 565 S.E.2d 368, 377 n.11 (W. Va. 2002).

"When there is controlling precedent on questions of Idaho law 'the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice.' " *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006) (citing *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)). Those circumstances are not present here.

Death penalty sentencing differs in numerous respects from other criminal sentencing, and the Eighth Amendment frequently imposes additional limitations when a defendant's life is

at stake. *See Harmelin v. Michigan*, 501 U.S. 957, 994 (1991). This is so because death is a qualitatively unique sentence. *Id.* at 995–96. The United States Supreme Court has held that, in capital cases, victim impact statements containing "characterizations and opinions about the crime, the defendant, and the appropriate sentence" violate the Eighth Amendment, *Payne v. Tennessee*, 501 U.S. 808, 830 n.2 (1991), but the Court has expressly refused to impose such a limitation on similar statements in non-capital cases, *see Booth v. Maryland*, 482 U.S. 496, 509 n.12 (1987), *overruled on other grounds by Payne v. Tennessee*, 501 U.S. 808 (1991). This Court, our Court of Appeals, and several other jurisdictions have followed this dichotomy. So has our Legislature, which codified the prohibition on the three *Payne v. Tennessee* categories of testimony in I.C. § 19-2515(5)(a), but not in I.C. § 19-5306(1)(e). The constitutional right to deliver victim impact statements is limited only when it results in manifest injustice—or, in capital cases, when such statements contain "[c]haracterizations and opinions about the crime, the defendant and the appropriate sentence." I.C. § 19-2515(5)(a). There is no basis to overrule such a well-established and reasonable distinction.

## C. The district court did not abuse its discretion in sentencing Grant to consecutive prison terms.

When a sentence is within the statutory limits, we review the sentence for an abuse of discretion. When reviewing the length of a sentence, we consider the defendant's entire sentence. The standard of review is well established:

> So long as the sentence is within the statutory limits, the appellant must show that the trial court, when imposing the sentence, clearly abused its discretion. Where reasonable minds could differ whether a sentence is excessive, this Court will not disturb the decision of the sentencing court. This Court will set aside the sentence only where reasonable minds could not differ as to the excessiveness of the sentence. To determine whether the trial court abused its discretion, this Court reviews all of the facts and circumstances of the case. To prevail, the appellant must establish that, under any reasonable view of the facts, the sentence was excessive considering the objectives of criminal punishment. Those objectives are (1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrongdoing.

*State v. Farwell*, 144 Idaho 732, 736, 170 P.3d 397, 401 (2007) (citations and quotation marks omitted). "A trial court does not abuse its discretion if it (1) correctly perceives the issue as

discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *Gerdon v. Rydalch*, 153 Idaho 237, 241, 241 P.3d 740, 744 (2012) (quoting *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008)).

Grant argues that his sentences, although within the statutory limits,[6] are excessive. Specifically, Grant disagrees with the district court's decision to sentence him to serve his prison terms for possession of a controlled substance and domestic battery consecutively to his prison term for aggravated battery. However, all of Grant's arguments amount to a mere re-hashing of the evidence that was presented in the sentencing hearing. He does not even bother to explain what aspect of the district court's reasoning is supposedly at odds with the applicable legal standards or demonstrates an undisciplined break from reason. On the contrary, the district court carefully and rationally weighed the relevant objectives of societal protection, specific and general deterrence, rehabilitation, and punishment. There was evidence that suggests that Grant's crimes are explained, at least in part, by his mental illnesses, drug addiction, and childhood abuse, and that, according to his own self-serving statements, he has now reformed and will pose no further threat to society. There is also ample evidence from which one reasonably could conclude that Grant is an incorrigible felon who will continue to pose a grave threat to those around him if he is not sentenced to a long prison term. Therefore, there is no basis for vacating Grant's sentences.

**D.    The district court did not abuse its discretion in denying Grant's I.C.R. 35 request for leniency.**

> If a sentence is within the statutory limits, a motion for reduction of sentence under Rule 35 is a plea for leniency, and we review the denial of the motion for an abuse of discretion. When presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the Rule 35 motion. An appeal from the denial of a Rule 35 motion cannot be used as a vehicle to review the underlying sentence absent the presentation of new information.

*State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007) (citations and quotation marks omitted). Grant claims that the district court abused its discretion by failing to reduce his

---

[6] The maximum term of imprisonment for aggravated battery is fifteen years, I.C. § 18-908; for possession of a (schedule II) controlled substance, seven years, I.C. § 37-2732(c)(1); and for domestic battery, ten years, I.C. § 18-918(2)(b). Therefore, the maximum term of imprisonment to which Grant could have been sentenced is thirty-two years. He was sentenced to nine years fixed and eleven years indeterminate, for a total of twenty years.

sentence in light of the following "new information": (1) two letters of support from his family, (2) his family's attendance at his Rule 35 hearing, and (3) a letter from Grant indicating that he was continuing to pursue his rehabilitation. The district court reasonably considered the proper factors when evaluating whether Grant's sentence was excessively harsh in light of this information. Therefore, there is no basis for reversing the denial of Grant's Rule 35 motions.

## V. CONCLUSION

The district court conducted a sufficient inquiry into Dykman's Motion to Withdraw, properly admitted the victim impact statements, acted within its discretion in sentencing Grant to consecutive prison terms that were well within the statutory maxima, and acted within its discretion in rejecting Grant's request for leniency. Therefore, we affirm the district court in all respects.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.