# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39160

KENTON D. JOHNSON, a married man
dealing with his sole and separate property;
NEPHI H. ALLEN, a married man dealing
with his sole and separate property; and
REXBURG PLUMBING & HEATING LLC,
an Idaho limited liability company,

    Plaintiffs-Counterdefendants-
    Appellants,

v.

HIGHWAY 101 INVESTMENTS, LLC,

    Defendant-Counterclaimant-
    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2013 Term

2014 Opinion No. 9

Filed: February 7, 2014

Stephen Kenyon, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Madison County. Hon. Dane H. Watkins, Jr., District Judge.

The district court's grant of summary judgment in Highway 101's favor is <u>reversed</u>, and the case <u>remanded</u> for further proceedings consistent with this opinion.

Rigby, Andrus & Rigby, Chtd., Rexburg, for appellants. Hyrum D. Erickson argued.

Smith, Driscoll & Associates, PLLC, Idaho Falls, for respondent. Bryan D. Smith argued.

---

HORTON, Justice.

The dominant owners of an easement appeal from an adverse grant of summary judgment dismissing all of their claims, which were premised on the servient owner's construction of a permanent sign within the easement. The sign effectively reduced the width of the easement from twenty-five feet to nineteen feet at one point along its length. On appeal, the dominant owners argue that the district court erred in granting the servient owner's motion for summary judgment and contend that any reduction in the width of their easement is per se unlawful.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1

Nephi Allen and Kenton Johnson are the managing members of Rexburg Plumbing and Heating, LLC (collectively "RP&H"). They operate RP&H from a building located on property that they own in Rexburg, Idaho. Idaho Highway 33 runs roughly north-south along the western boundary of the RP&H property. Directly to the north of the RP&H property is a street known as "American Street," which provides ingress and egress to and from Idaho Highway 33. RP&H has an express easement over American Street by virtue of a deed that conveys "a right-of-way to be used in common with others described as follows: [metes and bounds description]." Immediately to the east of the RP&H property lies property owned by Highway 101 Investments, LLC, a self-storage company. Highway 101 purchased this property on February 20, 2007. The property purchased by Highway 101 included a right-of-way easement identical to RP&H's easement.

In 2008, Highway 101 began to erect a sign on American Street within the easement boundaries shared by Highway 101 and RP&H. A hole was dug for the sign on August 6, 2008. Thereafter, the sign-post and two bollards were installed on August 19, 2008, and the sign was placed atop the sign-post on August 26, 2008. In July of 2009, after construction of the sign was complete, Highway 101 purchased the entire easement property in fee simple, making Highway 101 the owner of the servient estate.

The sign erected by Highway 101 is twenty feet wide, ten feet tall, and fourteen feet above the ground. It sits atop a sign-post that is sixteen inches in diameter; there is also a bollard on either side of the post measuring five inches in diameter. The sign is slightly less than six feet away from the northern boundary of the twenty-five-foot-wide easement, effectively reducing the easement width to slightly over nineteen feet at the point of the post and bollards. However, because RP&H's property runs adjacent to the southern boundary of the easement, the total distance between the sign and the RP&H building is between fifty and fifty-nine feet.

In February of 2010, RP&H filed its Complaint, which requested an injunction restraining Highway 101 from maintaining any obstruction above the surface of the roadway within the easement boundary. After discovery, the parties filed cross-motions for summary judgment. The district court denied RP&H's motion and granted Highway 101's motion. The district court held that Idaho law gives servient estate owners the right to use their land, but forbids them from unreasonably burdening the privileges of dominant estate owners. In this case, the district court looked to the deed to define RP&H's "privilege" and determined the specific privilege was for ingress and egress only. Because testimony of RP&H's owners indicated that

the sign did not prevent them, or their customers, from accessing the store from Highway 33, the district court concluded that Highway 101's placement of the sign did not unreasonably interfere with RP&H's use of American Street as a right-of-way. Accordingly, the court held that there was no genuine issue of material fact about whether the sign materially interfered with RP&H's use of the easement.[1] Final judgment was entered in favor of Highway 101, from which RP&H timely appealed.

## II. STANDARD OF REVIEW

In reviewing a grant of summary judgment, this Court employs the same standard as the district court. *Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court freely reviews questions of law. *Brannon v. City of Coeur d'Alene*, 153 Idaho 843, 848, 292 P.3d 234, 239 (2012).

## III. ANALYSIS

**A. The erection of a permanent structure within an easement of definite location and dimensions is per se unreasonable.**

"An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Capstar Radio Operating Co. v. Lawrence*, 153 Idaho 411, 420, 283 P.3d 728, 737 (2012) (quoting *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006)). "An easement owner is entitled to relief upon a showing that he is obstructed from exercising privileges granted by the easement." *Conley v. Whittlesey*, 133 Idaho 265, 272, 985 P.2d 1127, 1134 (1999); *see also Bratton v. Scott*, 150 Idaho 530, 536, 248 P.3d 1265, 1271 (2011).

> The law is well settled with respect to the correlative rights of dominant and servient owners of easements. The owner of the servient estate is entitled to use the estate in any manner not inconsistent with, or which does not materially interfere with, the use of the easement by the owner of the dominant estate. In other words, the servient estate owner is entitled to make uses of the property that do not unreasonably interfere with the dominant estate owner's enjoyment of the easement.

---

[1] There is evidence in the record that the sign post obstructs vehicles backing away from the RP&H building. However, in light of our resolution of this case, it is unnecessary for us to consider that issue.

*Ruddy-Lamarca v. Dalton Gardens Irrigation Dist.*, 153 Idaho 754, 758, 291 P.3d 437, 441 (2012) (quoting *Nampa & Meridian Irrigation Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 522, 20 P.3d 702, 706 (2001)).

A majority of our sister states recognize a caveat to the general rule of reasonableness: a permanent structure is per se unreasonable if it diminishes an easement with definite location and dimensions.[2] *See Magna, Inc. v. Catranis*, 512 So. 2d 912, 913–14 (Ala. 1987); *Andersen v. Edwards*, 625 P.2d 282, 286 (Alaska 1981); *Squaw Peak Cmty. Covenant Church of Phoenix v. Anozira Dev., Inc.*, 719 P.2d 295, 299 (Ariz. Ct. App. 1986); *Sand Lake Shoppes Family Ltd. P'ship v. Sand Lake Courtyards, L.C.*, 816 So. 2d 143, 146 (Fla. Dist. Ct. App. 2002) (prohibiting erection of billboard in easement despite the fact that it did not prevent ingress and egress); *Consol. Amusement Co. v. Waikiki Bus. Plaza, Inc.*, 719 P.2d 1119, 1123 (Haw. Ct. App. 1986); *McCauley v. Harris*, 928 N.E.2d 309, 315 (Ind. Ct. App. 2010); *Aladdin Petroleum Corp. v. Gold Crown Props., Inc.*, 561 P.2d 818, 822, 825 (Kan. 1977); *Thiels v. Dennis*, 29 So. 3d 715, 718 (La. Ct. App. 2010); *Miller v. Kirkpatrick*, 833 A.2d 536, 547 (Md. 2003); *Scoppa v. Myers*, 491 A.2d 148, 150 (Pa. Super. Ct. 1985); *Xanadu Horizontal Prop. Regime v. Ocean Walk Horizontal Prop. Regime*, 410 S.E.2d 580, 581–82 (S.C. Ct. App. 1991); *Piney Meeting House Invs., Inc. v. Hart*, 726 S.E.2d 319, 323 (Va. 2012) (noting that the majority rule did not apply where structures were entirely underground and therefore did not encroach on the easement); *Jackson Hole Mountain Resort Corp. v. Alpenhof Lodge Assocs.*, 109 P.3d 555, 559–60 (Wyo. 2005) (reasoning that a contrary rule would allow dominant estate owners to retake an easement in a piecemeal fashion); 25 Am. Jur. 2d *Easements and Licenses* § 86 ("A permanent physical obstruction placed in an express easement created by grant, in the absence of an agreement or surrounding circumstances to the contrary, interferes as a matter of law with the dominant tenement's right to the use of all of the express easement."); 28A C.J.S. *Easements* § 238 ("If by the terms of the grant or reservation the way must be of a certain width, no structures can be erected which encroach on the width stated, notwithstanding that the structures would not unreasonably interfere with the right of ingress and egress." (footnotes omitted)). Permanent structures that do not interfere with the right to use the entire dimension of the easement, such as

---

[2] This rule is inapplicable where the easement was not conveyed by grant, such as a prescriptive easement or easement by necessity, or where the easement was conveyed by grant but lacks a definite location or dimensions. *See Aladdin Petroleum Corp. v. Gold Crown Props., Inc.*, 561 P.2d 818, 825 (Kan. 1977); 28A C.J.S. *Easements* § 238.

an underground pipeline, may be lawfully located within the boundaries of the easement because they do not encroach on the dominate owner's easement rights.

We recognize that a minority of states adhere to a contrary reasonableness standard. *See e.g. Skow v. Goforth*, 618 N.W.2d 275, 278–81 (Iowa 2000) (refusing to enjoin construction of fence that would have intruded on a sixteen-and-a-half-foot-wide easement by as little as two inches; reasoning that balancing the needs of the dominant and servient estate owners will maximize aggregate utility); *Musselshell Ranch Co. v. Seidel-Joukova*, 261 P.3d 570, 577 (Mont. 2011) (requiring removal of culvert installed in irrigation ditch, but stating that "[s]ome permanent encroachments may not justify a finding of unreasonable interference"); *Mill Pond Condo. Ass'n v. Manalio*, 910 A.2d 392, 395 (Me. 2006) (reciting the majority rule, but reaching the opposite conclusion where there was no evidence that sign interfered with use of the easement for ingress and egress); *Gaw v. Seldon*, 85 So. 3d 312, 316–17 (Miss. Ct. App. 2012) (owner of dominant estate not entitled to removal of encroaching columns until such time as they actually interfere with use of the easement); *Baum v. Glen Park Props.*, 660 S.W.2d 723, 726–27 (Mo. Ct. App. 1983) (allowing erection of sign within easement so long as it did not interfere with ingress and egress); *D'Abbracci v. Shaw-Bastian*, 117 P.3d 1032, 1040 (Or. Ct. App. 2005); *DeHaven v. Hall*, 753 N.W.2d 429, 439–40 (S.D. 2008).

We find the majority approach more persuasive. Because it provides a clear, bright-line standard, the majority rule will avoid costly and time-consuming litigation concerning whether the servient estate owner's use of the easement area is reasonable. The risk of ongoing legal feuds associated with the minority rule is particularly worrisome because a structure's reasonableness necessarily depends on changing circumstances. We also believe that the majority rule best recognizes the sanctity of a dominant owner's bargained-for property rights.

We recognize that, in rare cases, a dominant owner will irrationally refuse to permit a servient owner to erect a permanent structure within an easement of definite dimension and location, even when the structure would not unreasonably interfere with the dominant owner's use of the easement. While it may be tempting to adopt a rule of reasonableness in order to maximize overall societal utility in these situations, and although Idaho's citizens are not always capable of reaching amicable resolutions to their disputes, the protracted and open-ended litigation invited by a rule of reasonableness offsets the slight societal utility benefits produced under a reasonableness standard.

5

We find the dissent's discussion and reliance on *Nampa & Meridian Irrigation District v. Washington Federal Savings*, 135 Idaho 518, 20 P.3d 702 (2001), to be misplaced. In *Nampa & Meridian*, Washington Federal bank decided to subdivide a piece of property it owned on one side of a canal; before doing so, it was required to erect a sidewalk and a fence along the canal. *Id.* at 521, 20 P.3d at 705. Nampa & Meridian sued to enjoin the construction along the canal arguing that Washington Federal's erection of the sidewalk and fence would interfere with Nampa & Meridian's easement rights. Although Nampa & Meridian had been granted a forty-foot easement by Washington Federal's predecessor in interest, Nampa & Meridian relied entirely on its easement rights under I.C. § 42-1102.[3] This statute gives irrigation companies the right to:

> [E]nter the land across which the right-of-way extends, for the purposes of cleaning, maintaining and repairing the ditch, canal or conduit, and to occupy such width of the land along the banks of the ditch, canal or conduit as is necessary to properly do the work of cleaning, maintaining and repairing the ditch, canal or conduit with personnel and with such equipment as is commonly used, or is reasonably adapted, to that work.

*Id*. at 522, 20 P.3d at 706 (quoting I.C. § 42-1102). The easement rights created by I.C. § 42-1102 are not of definite location and dimension. Rather, the statute only conveys a right-of-way that "is necessary to properly do the work of cleaning, maintaining and repairing the ditch, canal or conduit with personnel and with such equipment as is commonly used, or is reasonably adapted, to that work." I.C. § 42-1102. Because the easement rights upon which Nampa & Meridian relied were not of definite location and dimension, as is the metes and bounds easement at issue in this case, *Nampa & Meridian* is distinguishable from the present case and is not controlling here.

## IV. CONCLUSION

We hold that the erection of a permanent structure within an easement of definite location and dimension is per se unreasonable. Therefore, the district court's grant of summary judgment in Highway 101's favor must be reversed, and the case remanded for further proceedings consistent with this Opinion. Highway 101's request for attorney's fees pursuant to I.C. § 12-121 is denied because it is not a prevailing party. RP&H did not request attorney's fees and therefore it is not entitled to any; however, we award RP&H its costs on appeal as a matter of right.

---

[3] Nampa & Meridian Irrigation District's briefing on appeal stated "[Nampa & Meridian Irrigation District]'s easement arises pursuant to I.C. § 42-1102."

Chief Justice BURDICK and Justices EISMANN and J. JONES, **CONCUR**.

W. Jones, dissenting:

The majority holds that when an easement is defined by metes and bounds the dominant owner may capriciously prohibit the servient owner from erecting a permanent structure therein. To the majority, it is irrelevant whether the structure would in no way inconvenience the dominant owner and would greatly benefit the servient owner. Because the rule of reasonableness is firmly entrenched in Idaho's law, and no compelling grounds exist for modifying it, I respectfully dissent.

This case requires only a simple application of the holding in *Nampa & Meridian Irrigation District v. Washington Federal Savings*, 135 Idaho 518, 20 P.3d 702 (2001). The majority attempts to distinguish that case on its facts by claiming that the fence at issue there was "easily removable"—a "fact" that is neither printed in the Idaho Reports nor apparent from the appellate record in that case. Quite to the contrary, during the *Nampa & Meridian* trial, the following exchange occurred between the bank's counsel and one of its employees:

Q: Now, with regard to the fence that is proposed for the sidewalk, how high is that proposed to be?
A: Four feet.
Q: And are there gates or removable panels proposed?
A: At the present time we proposed ten of the panels be removable. I think if [the irrigation district] felt like they needed more, we would certainly be willing to talk about that.

In other words, some of the panels were removable; some were not. The non-removable panels were permanent above-ground structures erected in an easement with a definite location and dimensions. Yet, nonetheless, this Court applied the reasonableness test. We should as well.

RP&H's attempt to distinguish *Nampa & Meridian*—on the grounds that the easement there was for canal maintenance rather than travel—is equally feckless. That is a distinction without a difference. In *Nampa & Meridian*, the irrigation district claimed a right to use every inch of its easement for canal maintenance purposes. Here, RP&H claims a right to use every inch of its easement for travel. In both cases, a physical structure erected by the servient owner deprived the dominant owner of that alleged right. Thus, the reasonableness test is equally applicable in both cases.

Because *Nampa & Meridian* cannot be blinked away it must either be followed or, if sufficiently compelling reasons justify doing so, overruled. "When there is controlling precedent

7

on questions of Idaho law 'the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice.'" *State v. Grant*, 154 Idaho 281, 287, 297 P.3d 244, 250 (2013) (quoting *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006)). None of those factors is present here. Moreover, the rule of stare decisis has added weight in property law, where stability and certainty are paramount concerns. *See, e.g.*, *Payne v. Tennessee*, 501 U.S. 808, 828 (1991); *City of Buffalo v. Cargill*, 374 N.E.2d 372, 377 (N.Y. 1978); *Johnson v. Chi., Burlington & Quincy R.R. Co.*, 66 N.W.2d 763, 770 (Minn. 1954); *Dorsey v. Tisby*, 234 P.2d 557, 564 (Or. 1951).

Our adherence to the rule of reasonableness in *Nampa & Meridian* is not "manifestly wrong" merely because a majority of states follow the per se rule. *See Asbury Park, L.L.C. v. Greenbriar Estate Homeowners' Ass'n*, 152 Idaho 338, 345, 271 P.3d 1194, 1201 (2012) (district court is obliged to follow Idaho law, rather than restatement, which presumably compiles majority rules). Quite to the contrary, Idaho is in good company in rejecting the per se rule and instead embracing a more flexible approach. *See Mill Pond Condo. Ass'n v. Manalio*, 910 A.2d 392, 395 (Me. 2006) (reciting the majority rule, but reaching the opposite conclusion where there was no evidence that the sign interfered with the use of the easement); *Skow v. Goforth*, 618 N.W.2d 275, 278–81 (Iowa 2000) (refusing to enjoin the construction of fence that would have intruded on sixteen-and-a-half-foot-wide easement by as little as two inches; reasoning that balancing the needs of the dominant and servient estate owners will maximize aggregate utility); *Gaw v. Seldon*, 85 So.3d 312, 317 (Miss. Ct. App. 2012) (owner of dominant estate not entitled to removal of encroaching columns until such time as they actually interfere with use of the easement); *D'Abbracci v. Shaw-Bastian*, 117 P.3d 1032, 1040–41 (Or. Ct. App. 2005) (metes and bounds easement in and of itself did not limit servient estate owner's reasonable use of his land); *Baum v. Glen Park Props.*, 660 S.W.2d 723, 726–27 (Mo. Ct. App. 1983) (allowing erection of sign within easement so long as it did not interfere with ingress and egress).

Neither has the rule of reasonableness proven over time to be "unwise." Although the majority claims that the rule of reasonableness will "invite chaos" and increase litigation, I see no evidence of a flood of easement-interference cases threatening to deluge our courts. Quite to the contrary, *Nampa & Meridian* is the only prior Idaho Supreme Court case that is directly on

8

point. And, even if there were a torrent of such cases, I doubt that the per se rule would do much to stanch it, because many questions remain to be worked out under that rule. For example, the majority states that "an underground pipeline or a paved walkway" would not fall within the prohibition on permanent above-ground structures. Based on its discussion of *Nampa & Meridian*, it also does not consider a removable fence to be a permanent structure. But what about an underground pipeline that has a raised access cover? What about a paved walkway that is several inches higher than the surrounding surface? What about a fence or sign that is removable, but only after several hours of difficult labor? As these hypotheticals show, even under the per se rule one is forced to confront questions of "reasonableness" in order to draw the lines between "underground" versus "aboveground" and "permanent" versus "removable." After all, all permanent structures are removable; it is only a question of how difficult it is.

Finally, the rule of reasonableness has not worked any "continuing injustice" on either dominant or servient owners when applied in other contexts. *See Ruddy-Lamarca v. Dalton Gardens Irrigation Dist.*, 153 Idaho 754, 757–58, 291 P.3d 437, 440–41 (2012) (applying rule of reasonableness to determine whether district court properly limited width of secondary easement that provided access to dominant owner's underground pipeline); *Lovitt v. Robideaux*, 139 Idaho 322, 328–29, 78 P.3d 389, 395–96 (2003) (applying rule of reasonableness to determine whether district court properly enjoined servient owner's erection of gate at entrance to easement); *Nampa & Meridian Irrigation Dist. v. Mussell*, 139 Idaho 28, 33–34, 72 P.3d 868, 873–74 (2003) (applying rule of reasonableness to determine whether district court properly awarded damages and enjoined servient owner from excavating bank of irrigation lateral); *Drew v. Sorensen*, 133 Idaho 534, 538, 989 P.2d 276, 280 (1999) (applying rule of reasonableness to determine whether district court properly enjoined dominant owner's construction of fence on boundaries of easement). I see no reason why the rule of reasonableness should be binding law in those other contexts, but should be found unjust when applied here.

Rather, it is eminently just that both dominant and servient owners answer to the rule of reasonableness. It is eminently unjust for a court to compel a servient owner to tear down a structure, perhaps at great expense, for no other reason than the dominant owner's caprice. If a servient owner decides to build a permanent above-ground structure in a dominant owner's easement, he does so at the risk that a court may later find that structure to be unreasonable and

compel him to remove it. But, he should remain free to assume that risk if he believes that he would prevail in such a lawsuit. In sum, there is no basis for overruling *Nampa & Meridian*.

Not only did the district court correctly apply the rule of reasonableness, it also reached the right result. RP&H argues, in a single paragraph, that the sign unreasonably interfered with its use of the easement. This contention is supported by nothing more than vague allegations that Allen and some unidentified customers hit the sign while backing away from the RP&H building, notwithstanding that they had between fifty and fifty-nine feet in which to do so. Allen admitted that any driver who looked where he or she was going could avoid the sign. These allegations do not create a genuine issue of material fact regarding the sign's reasonableness, and therefore I would affirm the district court's judgment.